IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MANDY S. GORDON, | ) | CASE NO. 1:14 CV 92 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.     Nature of the case and proceedings**

Before me[1] is an action by Mandy S. Gordon under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying her applications

for disability insurance benefits and supplemental security income.[2] The Commissioner has

answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 16. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 12.

[4] ECF # 13.

[5] ECF # 7.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Gordon, who was 42 years old at the time of the ALJ's decision,[11] has a high school education, along with some college,[12] and was living with her father at the time of the hearing.[13] The ALJ found that she had past relevant work experience as an insurance agent and cosmetologist.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Gordon had the following severe impairments: bipolar disorder, generalized anxiety disorder, and personality disorder.[15]

---

[6] ECF # 14.

[7] ECF # 19 (Gordon's brief); ECF # 24 (Commissioner's brief).

[8] ECF # 19 at 3-6 (Gordon's charts); ECF # 24-1 (Commissioner's charts).

[9] ECF # 19 at 1-2 (Gordon's fact sheet).

[10] ECF # 26.

[11] Transcript ("Tr.") at 17, 18.

[12] *Id.* at 49, 50.

[13] *Id.* at 14.

[14] *Id.* at 17.

[15] *Id.* at 13.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Gordon's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple routine work with simple short instructions, can make simple work-related decisions, would have few changes in the work setting, would not be working at a production quota pace, and she would be limited to superficial contact with supervisors, co-workers and general public meaning no negotiations, confrontations, or lengthy discussions.[16]

The ALJ decided that this RFC precluded Gordon from performing her past relevant work.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Gordon could perform.[18] The ALJ, therefore, found Gordon not under a disability.[19]

## C.    Issue on judicial review and decision

Gordon asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Gordon presents the following issue for judicial review:

---

[16] *Id.* at 15.

[17] *Id.* at 17.

[18] *Id.* at 18.

[19] *Id.*

The ALJ gave the opinion of the consulting examining psychologist, Richard Davis, "some" weight. Did the ALJ properly analyze and articulate as to that opinion and does substantial evidence support the weight assigned?

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

### A.      Standard of review – substantial evidence

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## B.    Application of standard

As noted, this case presents one issue for decision: Whether the ALJ properly gave the opinion of the consulting examining psychologist, Richard Davis, only "some weight," while, in turn, giving "great weight" to the opinions of two state agency reviewing psychologists ("SARPs"). Gordon argues that if the ALJ had given greater weight to Davis's opinion that she is subject to "ever-changing moods,"[23] the ALJ would necessarily have been required to find in the RFC that these mood swings prevented her from sustaining work activity for a full eight-hour day, five days a week, and so would have supported a finding of disability.

It is important to note from the outset that the ALJ did acknowledge that Davis's opinion "is fairly consistent with the few treatment notes that appear in the record."[24] However it is also important to note that Davis did not directly opine as to any specific

---

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[23] *Id.* at 267, 268.

[24] *Id.* at 17.

work-related limitations, but merely observed at several places, without further explanation, that Gordon is subject to "ever-changing moods."[25] By contrast, the opinions of the two SARPs that were given greater weight did offer more specific opinions as to Gordon's work-related limitations.[26] In that regard, both SARPs state on the record that they reviewed Davis's comments but gave them lesser weight because "specific [work-related] limitations are not provided."[27]

At its core, Gordon's complaint here is that the ALJ erred in assigning greater weight to the opinions of non-examining state agency sources over that of an examining source and then failed to give good reasons for that action.

This was the argument of the claimant in *Norris v. Commissioner of Social Security*.[28] There, the Sixth Circuit, in rejecting that claim, began its analysis by noting that the regulations require an ALJ to "evaluate every medical opinion" submitted in light of various listed factors, including the nature of the treatment relationship, the supporting medical basis for the opinion, and the opinion's overall consistency with the larger record.[29] *Norris* then observed that the regulations provide for these opinions to be accorded different levels of deference based on the closeness of the medical source to the claimant.

---

[25] *Id.* at 267, 268.

[26] *Id.* at 16.

[27] *Id.* at 63, 76, 89, and 102.

[28] *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433 (6th Cir. 2012).

[29] *Id.* at 438-39 (citing 20 C.F.R. §§ 404.1527(d) and 419.927).

Specifically, an opinion from a treating source is "accorded the most deference" because of the "ongoing treatment relationship" between the patient and the opining physician.[30] A non-treating source, who nonetheless physically examined the patient, does not have the same ongoing relationship with the patient as a treating source and so is accorded the next highest level of deference.[31] An opinion from a source whose contact with the patient is limited to a review of the records is entitled to the least deference.[32]

That said, while it is true that the opinion of an examining, non-treating source is generally entitled to more weight than that of a reviewing source, is not true, as Gordon seems to suggest, that it is *per se* erroneous for an ALJ to give greater weight to the opinion of a reviewing source over that given to a non-treating, examining source. As the Sixth Circuit clearly teaches, any medical opinion in the record, even that of a treating source, may be rejected completely, or assigned lesser weight than another opinion, when the source opinion at issue is not well supported by the medical diagnostics, or if it is inconsistent with the other evidence of the record.[33] Moreover, and of particular relevance here, an ALJ need only make any presumption as to the weight entitled, or engage in the analysis rebutting that

---

[30] *Id.* at 439 (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (internal quotation marks omitted).

[31] *Id.* (citation omitted).

[32] *Id.* (citation omitted).

[33] 20 C.F.R. §§ 404.1527, 416.927; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

presumption set forth in *Gayheart v. Commissioner of Social Security*,[34] in cases involving the opinion of a treating source.[35]

Simply put, an ALJ is permitted to credit the opinions of state agency reviewing sources over that of a one-time examining source when the reviewing source opinions are more consistent with the overall record.[36] And, in making this determination, the ALJ is under no special articulation requirement to explain in detail the relative weights given to the non-treating examining source opinion as compared to the opinions of the reviewing sources.[37] As the Sixth Circuit set out in *Norris*, "[s]o long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review."

In addition, it is important to keep in mind that an RFC is not a raw, unfiltered aggregation of symptoms or impairments but instead reflects the specific work-related limitations caused by the impairments or symptoms, as determined by the Commissioner.[38]

---

[34] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[35] *Norris*, 461 F. App'x at 439 (citation omitted).

[36] *Id.* at 440 (citing *Ealy*, 594 F.3d at 514-15).

[37] *See*, *Gayheart*, 710 F.3d at 376. Unlike as with a treating physician, "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency and supportability, but only if a treating source opinion is not deemed controlling. Other facts 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion."

[38] *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). The RFC "is an assessment of what [the claimant] can and cannot do, not what she does or does not suffer

In that same regard, the Sixth Circuit holds that the vocational hypothetical need only include the work-related limitations as determined by the RFC, and need not list every medical condition or symptom.[39]

Thus, in this case, it would not have been appropriate for the ALJ to have simply listed the symptom of "mood swings" in the RFC. Instead, it was appropriate to recognize in the RFC any work-related limitation specifically found to arise from the mood swings.

Indeed, I note here that the ALJ in this regard properly looked to expert medical opinions for evidence of exactly how the mood swings manifested themselves in work-related limitations.[40] The ALJ, as noted above, relied on the opinions of the two SARPs, each of whom reviewed and evaluated Davis's report. As such, and for the reasons stated above, the weight given to these opinions, and the articulation for that decision, are supported by substantial evidence. Thus, the opinions themselves are substantial evidence in support of the RFC and so of the final decision as to disability.

As an additional matter, I note that Gordon also raises a lesser point contending that the RFC did not properly incorporate the SARPs's opinion that Gordon be limited to "simple

—————————————

from."

[39] *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).

[40] As I noted in *Gibbons v. Comm'r of Soc. Sec.*, No. 5:11 CV 737, 2012 WL 4434685, at *3 (N.D. Ohio Sept. 24, 2012) where a medical symptom or impairment is directly addressed in functional terms by a medical opinion to which the ALJ assigns significant weight, there is no issue about the ALJ "playing doctor" by attempting, without evidentiary support, to ascribe a work-related limitation to a purely medical condition.

1-3 step tasks."[41] The RFC here includes a limitation to simple, routine tasks, but does not further specify that such tasks be only one to three steps. Rather, the RFC states that simple, routine tasks are characterized by "simple short instructions ... simple work-related decisions ... few changes in the work setting, and ... (no work) at a production quota pace."[42]

In *Russell v. Commissioner of Social Security*,[43] Magistrate Judge McHargh[44] noted that while the Social Security regulations separate a claimant's ability to understand, remember and concentrate into just two categories – the ability to work with "short and simple" instructions or the ability to handle "detailed" or "complex" instructions – the DOT, on the other hand, employs a more finely graduated schedule moving from the lowest level of one or two step instructions at level one through to the most complex level of reasoning at level six.[45] By comparing how the term "simple instruction" corresponds to the DOT's classification of Level Two reasoning, Magistrate Judge McHargh concluded that a limitation to one or two step instructions, and simple, routine tasks, without production quotas, with a

---

[41] *See*, *e.g.*, Tr. at 104.

[42] *Id.* at 16.

[43] *Russell v. Comm'r of Soc. Sec.*, No. 1:13-CV-291, 2014 WL 1333262 (N.D. Ohio March 31, 2014).

[44] The parties here consented to his jurisdiction. *Id.*, at *1.

[45] *Id.*, at *14 (citations omitted).

flexible pace and a static environment is "not inconsistent with the ability to perform tasks" at the DOT classification level of Level Two.[46]

The RFC findings described in *Russell* closely track the findings here. Of critical importance is that Gordon's RFC of "short" "simple" instructions, "simple" work-related decisions, "few changes" in the work environment, and no production quotas equate to the DOT classification of Level Two reasoning, which is more restrictive than a limitation to one to three step reasoning that was opined in relation to Gordon. Simply put, as the analysis of Magistrate Judge McHargh shows, the RFC in this case is actually more restrictive than the expert medical opinions might otherwise require, and so Gordon's argument that the ALJ somehow committed reversible error in this regard is not well taken.

Accordingly, for the reasons stated above, I find that substantial evidence supports the decision of the Commissioner that Gordon is not disabled.

## Conclusion

As stated above, substantial evidence supports the finding of the Commissioner that Gordon had no disability. The denial of Gordon's applications is affirmed.

IT IS SO ORDERED.

Dated: March 10, 2015                              s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge

--------------------------------

[46] *Id.*, at *15.

-11-